UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEYLIN MASIEL MORAZAN CENTENO,<br>Petitioner,<br>v.<br>WARDEN/FACILITY ADMINISTRATOR, ADELANTO ICE PROCESSING CENTER, et al.,<br>Respondents. | Case No. 5:26-cv-05009-KES<br><br>ORDER GRANTING THE FIRST AMENDED PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Deylin Masiel Morazan Centeno ("Petitioner") filed a counseled first amended petition ("FAP") for writ of habeas corpus under 28 U.S.C. § 2241 ("FAP" at Dkt. 24), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). Respondents answered the FAP ("Answer" at Dkt. 25), and Petitioner replied ("Reply" at Dkt. 26). The parties have consented to the jurisdiction of the

Magistrate Judge. (Dkt. 19, 21.)

The Petition is granted and Respondents are directed to immediately release Petitioner from custody. Petitioner is entitled to relief on Ground 2 because Respondents violated her Fifth Amendment Procedural Due Process rights by failing to provide her with a pre-deprivation hearing before re-detaining her. Because success on this claim merits release from custody, the Court finds it unnecessary to reach Petitioner's other claims.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry into U.S., Release on Parole, and Current Detention.

Petitioner is a citizen of Nicaragua who entered the United States in 2022. (FAP ¶ 19.) Shortly after entering the United States, she was apprehended and placed into immigration custody. (Id. ¶ 20.) Petitioner was granted a humanitarian parole and released on an order of recognizance.[1] (Id.) She has since resided in the United States. (Id. ¶ 19.) Petitioner has a pending asylum application, and was issued a work permit on November 11, 2024. (Id. ¶ 21.) Petitioner alleges to have appeared for all her scheduled ICE and U.S. Citizenship and Immigration Services ("USCIS") appointments since her release on parole. (Id. ¶ 22.)

On April 14, 2026, Petitioner appeared at a regularly scheduled ICE check-in when she was re-detained. (Id. ¶ 23.) At this time, no order of removal had yet been entered against Petitioner. (Id. ¶ 23.) Petitioner was not served a warrant of arrest or notice to appear ("NTA") until April 16, 2026. (Id. ¶¶ 24-25.) The NTA charged Petitioner as a non-citizen "present in the United States without having been inspected or paroled." (Id. ¶ 25.) Petitioner alleges she has no criminal record (Id. ¶ 32), which Respondents do not contest in their Answer. An

[1] Petitioner alleges that this parole was not properly revoked. (FAP ¶¶ 29-30.) Exhibit 1 to the Answer is a document indicating that Petitioner was paroled, with the parole to expire on March 1, 2023. (Dkt. 25-1 at 2.)

immigration judge ("IJ") ordered removal on August 7, 2026, and Petitioner's appeal to the Board of Immigration Appeals ("BIA") is still pending. (Dkt. 24 at 39-40.)

**B. Habeas Proceedings.**

Petitioner filed two prior pro se petitions challenging her detention on April 21, 2026, and June 25, 2026. Her April 21 petition raised an unlawful denial of bond hearing claim, which was granted by the Court, and a due process claim which was denied as moot. Centeno v. Mullin, No. 5:26-cv-02023-KES (C.D. Cal.), Dkt. 13, 16. On May 5, 2026, the IJ held a bond hearing and denied Petitioner's request for relief, finding her to be a flight risk. (Dkt. 24 at 32.) Petitioner's June 25 petition requested a new bond hearing in light of new evidence mitigating her flight risk, which Respondents did not oppose and the Court granted. Centeno v. Warden, Adelanto ICE Processing Center, No. 5:26-cv-03533-MCS-KES, Dkt. 14, 15. On July 28, 2026, the IJ again denied Petitioner's request for relief. (Dkt. 24 at 37.)

Petitioner filed her original pro se petition in the present case on August 31, 2026. (Dkt. 1.) Petitioner also filed an ex parte application for a temporary restraining order ("TRO") on August 31, 2026 (Dkt. 2), which the district court denied on September 1, 2026 (Dkt. 7), before the parties consented to magistrate judge jurisdiction. Petitioner filed a renewed application for a TRO on September 8, 2026 (Dkt. 10), which the district court denied on September 9, 2026 (Dkt. 15). On September 10, 2026, the Court appointed Petitioner counsel. (Dkt. 17.) Petitioner filed a motion for leave to file a first amended petition on September 22, 2026 (Dkt. 20), which the Court granted (Dkt. 23).

Petitioner filed her counseled FAP on September 24, 2026. (Dkt. 24.) The FAP raises the following claims:

Ground 1: Petitioner's detention constitutes a deprivation of liberty in violation of the Fifth Amendment's Substantive Due Process Clause. (FAP ¶ 65.)

Petitioner argues that no change in circumstances have occurred since her release on parole in 2022, that she is neither a danger to the community nor a flight risk, and that Respondents lack any special justification or governmental interest in her continued detention which would outweigh her liberty interests. (Id. ¶¶ 66-69.)

Ground 2: Petitioner's detention constitutes a deprivation of liberty in violation of the Fifth Amendment's Procedural Due Process Clause. (Id. ¶¶ 71-72.) Petitioner argues that she has a strong liberty interest protected by the Procedural Due Process Clause, and that the balance of interests favors Petitioner's release. (Id. ¶¶ 73-78.)

Ground 3: Petitioner's arrest was an unreasonable seizure in violation of her Fourth Amendment rights, because Respondents arrested her without probable cause and without a valid warrant. (Id. ¶¶ 79-87.)

Ground 4: Petitioner's warrantless arrest, without making an individualized determination of flight risk, violates 8 U.S.C. § 1357(a)(2)'s requirement that warrantless arrests be accompanied by a "reason to believe" an individual is likely to escape before a warrant can be obtained. (Id. ¶¶ 89-90.)

Ground 5: Petitioner's arrest without a warrant violates 8 C.F.R. § 287.8(c)(2)(ii)'s requirement that officers have a reason to believe an individual is likely to escape before a warrant can be obtained. (Id. ¶¶ 92-94.)

Ground 6: Petitioner's re-detention without a pre-deprivation hearing constitutes an ultra vires act which Petitioner has a non-statutory right of action to set aside. (Id. ¶¶ 95-99.)

The FAP asks the Court to issue injunctive relief ordering Petitioner's release and requiring notice and a pre-deprivation hearing before re-detaining her. (FAP at 25-26.) Petitioner also requests injunctive relief ordering Respondents to re-instate Petitioner's parole status. (Id. at 26.) Petitioner additionally requests costs and attorney's fees. (Id.)

Respondents filed their Answer on September 30, 2026, and Petitioner filed

her Reply on October 5, 2026. The FAP is now ripe for review.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies.

a. Legal Standard.

For habeas petitions filed under 28 U.S.C. § 2241, the exhaustion requirement is prudential, rather than jurisdictional. See generally Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Id. (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

b. Analysis.

Respondents' exhaustion argument relies on their contention that Petitioner is attempting to overturn the denials of bond in her prior bond hearings. (Answer at 9.) Petitioner contends that she is not attempting to do so; instead, she is challenging the constitutionality of her initial re-detention on April 14, 2026. (Reply at 15.) Petitioner correctly points out that immigration courts have no authority to address such a claim. (Id.); see R.N.G. v. Semaia, --- F. Supp. 3d ----, No. 26-cv-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (finding "Petitioner's claim falls squarely into the futility exception to prudential exhaustion" because the "administrative remedy Respondents suggest – a post-deprivation Rodriguez bond hearing before an Immigration Judge – would be incapable of addressing the injury alleged"). Accordingly, the Court finds exhaustion excused on the grounds of futility and irreparable injury to Petitioner.

### B. The FAP is Not Barred by the Abuse of the Writ Doctrine Because Petitioner Has Demonstrated Cause and Prejudice for Filing Successive Petitions.

Respondents argue that Petitioner is forbidden from raising her claims in the

FAP because she failed to raise those claims in her prior habeas petitions. (Answer at 4-5.)

**1. Legal Standard.**

"The doctrine of abuse of the writ generally 'forbids the reconsideration of claims that were or could have been raised in a prior habeas petition.' … Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result, or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim." Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011) (citations omitted). "The government bears the burden of pleading abuse of the writ…." Alaimalo, 645 F.3d at 1049 (declining to reach the issue because the government did not plead it).

In addition to raising claims which were already raised in prior petitions, a petition is successive if the petitioner had a "full and fair opportunity to raise the claim in the prior application." Eldridge v. Howard, 70 F.4th 543, 552 (9th Cir. 2023) (quoting Brown v. Muniz, 889 F.3d 661, 674 (9th Cir. 2018)). Such fair opportunity does not exist where (1) the claim was not ripe at the time of the first petition, or (2) the alleged violation occurred after the denial of the first petition. Id.

**2. Analysis.**

Respondents argue that, because the basis for Petitioner's present claims existed at the time of her first petition, she had a fair opportunity to raise those claims, making her present FAP successive. (Answer at 3-4.)

Petitioner argues, in part, that the abuse of the writ doctrine does not apply to subsequent petitions when prior petitions were granted, citing Magwood v. Patterson, 561 U.S. 320 (2010). (Reply at 3.) The exception for prior successful petitions is not as broad as Petitioner makes it out to be. Magwood held that

subsequent petitions were successive if they challenged the judgment on which the original petition was based, but were not successive if they challenged judgments which arose because of the petitioner's success on the first petition (e.g., a resentencing). Magwood, 561 U.S. at 331-33.

Here, Petitioner is not seeking relief from a new judgment which arose because of her success on the two prior petitions. The facts underlying Petitioner's claims in the FAP were already known to Petitioner at the time of her first petition, and Petitioner's claims were already ripe at the time of her first petition. Accordingly, the FAP is a successive petition.

However, successive petitions are not barred by the abuse of the writ doctrine if the petitioner can show cause for bringing the successive petition and resulting prejudice from failure to entertain the claims brought in the successive petition. Alaimalo, 645 F.3d at 1049.

Petitioner's Reply references her motion for leave to file her FAP, noting that Petitioner may have been the victim of "notario fraud." (Reply at 5.) In the motion, Petitioner argued that, when she was proceeding pro se, she may have relied on information given to her by people not authorized to practice law (i.e., the notario fraud), raised claims without a full understanding of their legal basis, and excluded claims which her later appointed counsel now believe to be viable.[2] (Dkt. 20 at 4-5.)

Courts have found cause and prejudice where a pro se petitioner filed a later, counseled petition. See, e.g., Haidari v. Scott, No. 2:26-cv-01146-TL, 2026 WL

---

[2] Respondents misconstrue the FAP to allege that Petitioner had a prior order of supervision that was revoked (which the FAP does not allege) when arguing that Petitioner could not in good faith file another petition because the newly alleged facts were not mentioned in her prior petitions. (Answer at 4.) Respondents' concerns are addressed both by the fact that they misconstrue the FAP and the fact that Petitioner now has counsel.

1194634, at *1 (W.D. Wash. May 1, 2026). Petitioner filed her prior petitions from custody, without any formal legal training, and without legal counsel. She now has counsel, and her counseled FAP raises new claims which, as discussed below, have merit. Petitioner has demonstrated cause and prejudice, so her successive FAP is not barred by the abuse of the writ doctrine.

### C. Petitioner is Entitled to Relief on Ground 2 Because Respondents Failed to Provide a Pre-Deprivation Hearing.

#### 1. Legal Standard.

a. Humanitarian Parole.

Noncitizens may be paroled into the United States for "urgent humanitarian reasons" or "significant public benefit" under 8 U.S.C. § 1182(d)(5)(A). The statute provides:

> The Secretary of Homeland Security may ... in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

The implementing regulation requires a noncitizen to "present neither a security risk nor a risk of absconding" to be eligible for parole. 8 C.F.R. § 212.5(b). The regulation further provides that termination of this parole may be "automatic" or "on notice." 8 C.F.R. § 212.5(e)(1), (2). Parole is automatically

terminated (1) "upon the departure from the United States of the alien," or (2) "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1). When parole automatically expires, the "alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required." Id.

Paragraph (e)(2) states that the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R § 212.5(e)(2). Further inspections and hearings "shall be conducted under section 235 or 240 of the [Immigration and Nationality Act] and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed." Id. "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody." Id.

b. Due Process.

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the

event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**2. Analysis.**

Petitioner contends that, because she was re-detained after being granted conditional release in the form of her parole, she has a significant liberty interest akin to those to which criminal parolees are entitled. (FAP ¶¶ 61-63.) She argues that, because she has resided in the United States for four years, is employed and married, and established lasting community ties, the risk of erroneous deprivation is high. (Id. ¶¶ 74-75.) Petitioner additionally argues that the government interest in detaining Petitioner is relatively minimal. (Id. ¶ 76.)

Respondents argue that, because Petitioner's parole expired on March 1, 2023, she has only the statutory rights provided by 8 U.S.C. § 1182(d)(5)(A). (Answer at 6.) Respondents argue that the post-deprivation bond hearings Petitioner received are adequate to protect against any erroneous deprivation of Petitioner's limited liberty interest. (Id. at 7.) Respondents aver that the government has a strong interest in "preventing aliens from remaining in the United States in violation of our law." (Id. at 8 (citations and alterations omitted).)

a. Liberty Interest and Private Interest Affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

To determine whether a specific conditional release rises to the level of a

protected liberty interest, '[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)].'" Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106-13 (E.D. Cal. 2025) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010)).

> In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Omer G. G., 815 F. Supp. 3d at 1106-13 (E.D. Cal. 2025) (parallel citations omitted).

Many district courts in this circuit have held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7

(C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2, 2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). This includes noncitizens granted humanitarian parole under § 1182(d)(5). See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. Jan. 23, 2026) ("While the Government's initial decision to parole Petitioner was discretionary, see 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an 'implicit promise that parole will be revoked only if he fails to live up to the parole conditions.' … For nearly three years, Petitioner relied on this promise to become 'gainfully employed,' live 'with family and friends,' and 'form the other enduring attachments of normal life.' … The length of Petitioner's release on parole further strengthens his private interest in his continued freedom from immigration detention") (quoting Morrissey, 408 U.S. at 482); see also Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *3, 2026 U.S. Dist. LEXIS 77391 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *4 (C.D. Cal. Jan. 13, 2026).

Many district courts in this circuit have also found that this liberty interest continues to exist even after parole under § 1182(d)(5) automatically expires. See Omer G. G., 815 F.Supp.3d at 1109 ("petitioner's liberty interest did not expire along with his parole"); Nasyrov v. Marin, No. 5:26-cv-01167-SRM-DSR, 2026 WL 1850022, at *5 (C.D. Cal. May 12, 2026) (same); Dieng v. Hermosillo, No. 2:26-cv-00190-LK, 2026 WL 411857, at *5 (W.D. Wash. Feb. 13, 2026) (same); see also Quiroz v. Larose, No. 26-cv-866, 2026 WL 673822, at *2 n.1 (S.D. Cal. Mar. 10, 2026) (collecting cases finding that the automatic "expiration of [a noncitizen's] parole does not impact the liberty interest in his release").

The Court finds this reasoning persuasive. While Petitioner's parole may have expired on March 1, 2023,[3] she continued to attend her scheduled meetings

[3] Petitioner also argues that the parole was improperly revoked, but even if the automatic termination was proper, Petitioner's liberty interest remains the

with ICE and USCIS for three years before her detention. (FAP ¶ 22.) She was even granted a work permit in November 2024, a year and a half after the expiration of her parole. (Id. ¶ 21.) These circumstances constitute an implicit promise, upon which Petitioner reasonably relied, that she would not be detained absent some changed circumstance demonstrating that she was a danger to the community or a flight risk, or that her removal was imminent. As discussed further below, there is no evidence of any changed circumstances in April 2026.

b. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

"In releasing Petitioner on humanitarian or significant public benefit parole," DHS "necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 879 (C.D. Cal. 2026) (citing 8 C.F.R. § 212.5(b)). "The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard." Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025); see also Ramos-Maldonado, 2026 WL 790788, at *4 ("In complying with Respondents' conditions of Petitioner's release, Petitioner

---

same.

was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm"); Duarte Barcia v. Marrero, No. 26cv4163-LL-DDL, 2026 WL 2283645, at *3 (S.D. Cal. Aug. 7, 2026) ("After the initial determination that Petitioner should be released on parole [which later expired] because he posed no danger to the community and was not a flight risk, Respondents have not produced any argument or evidence that these findings have changed").

Respondents rely on the fact that Petitioner was denied bond for being a flight risk in her two prior uncounseled bond hearings where the burden of proof was placed on Petitioner. (Answer at 2.) However, Respondents did not attach the IJ's findings in those prior hearings, written or oral. Respondents do not allege any fact in support of their contention that Petitioner is a flight risk. Respondents have never explained—either to Petitioner at the time of her arrest or in the present proceedings—what factual basis ICE had in April 2026 (if any) for changing the prior determination that she was neither a flight risk nor danger to the community. Nor do Respondents contest Petitioner's allegations that she has no criminal history, that she has attended every prior scheduled meeting with ICE and USCIS, that she is married and employed, and that she is an active member in her community and church. (FAP ¶¶ 32, 75; Dkt. 24 at 31.)

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

c. Countervailing Government Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4 (collecting cases); Gudavasov v. Marin, No. No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9,

2026) (same). The burden of a pre-detention hearing is also low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

Accordingly, all three Mathews factors weigh in favor of providing Petitioner a pre-deprivation hearing prior to any detention.

d. Appropriate Remedy is Release, Not Post-Deprivation Hearing.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *6 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); Aliyev v. LaRose, 2026 WL 699818, at *3 (S.D. Cal. Mar. 12, 2026) (holding that the petitioner, whose humanitarian parole had expired, was still entitled to notice and a pre-deprivation hearing prior to re-detention, and ordering the petitioner's release).

In fact, courts have frequently found that this type of due process violation

warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 882-83 (C.D. Cal. Jan. 23, 2026); Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (C.D. Cal. Apr. 1, 2026); Fernandez v. Semaia, No. 25-cv-03412-SPG-MBK, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (C.D. Cal. Jan. 13, 2026).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

### D. Petitioner's Other Claims Are Dismissed.

Granting Petitioner relief on Ground 2 would grant all the relief sought in the Petition, except the request for attorney's fees[4] and the request to issue an injunction ordering Respondents to re-instate Petitioner's parole status. Petitioner cites no authority supporting her contention the Court has the power to order her humanitarian parole re-instated after it has automatically expired. Accordingly, the Court declines to reach Petitioner's other claims.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. The Petition is granted as to Ground 2, and the other claims are dismissed.
2. Respondents shall **immediately release** Deylin Masiel Morazan Centeno (A# 246647289) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to

[4] To the extent Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

show cause re contempt.

4. Respondents shall not re-detain Petitioner without providing Petitioner a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that Petitioner's physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: October 19, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE